# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

KEITH SEE,                        )
       Plaintiff,            )
                 )
     v.                       )    CAUSE NO.: 1:17-CV-386-PRC
                 )
CITY OF FORT WAYNE and            )
OFFICER DAVID BUSH,               )
       Defendants.            )

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment and Designation of Evidence [DE 17], filed by Defendants City of Fort Wayne (the "City") and Officer David Bush on May 4, 2018, and on Defendants' Motion to Strike Portions of Keith See's Affidavit [DE 22], filed by the City and Officer Bush on June 1, 2018. Both motions are fully briefed.

## PROCEDURAL BACKGROUND

Keith See filed his Complaint in Allen County, Indiana, Superior Court on August 24, 2017. The City of Fort Wayne and Officer David Bush removed the action to this Court on September 7, 2017. In his Complaint, Mr. See alleges violations of the Fourth and Fourteenth Amendments to the United States Constitution and of Indiana law. Mr. See alleges that he was subjected to unreasonable search and seizure, malicious prosecution, discrimination due to his homelessness, false imprisonment, and false arrest.

The City and Officer Bush filed an Answer to the Complaint on September 15, 2017, and the instant Motion for Summary Judgment on May 4, 2018. Mr. See filed a response on May 18, 2018, and the City and Officer Bush filed a reply on June 1, 2018. In these briefs, the parties agree that all claims of homelessness discrimination should be dismissed. Also on June 1, 2018, the City and

Officer Bush filed the instant Motion to Strike. Mr. See filed a response to that Motion on June 8, 2018, and the City and Officer Bush filed a reply on June 14, 2018.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure require that a motion for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriate when no material fact is disputed and the moving parties are entitled to judgment as a matter of law, meaning that no reasonable jury could find for the other party based on the evidence in the record." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56 (a), (c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to

support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Spierer*, 798 F.3d at 507-08; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013).

"Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(c)(1), (e); *Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1986)). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-50.

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764, 765 (7th Cir. 2014); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to

evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth

of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*,

477 U.S. at 249-50.

## MOTION TO STRIKE

In the Motion to Strike, the City and Officer Bush ask the Court to strike the following

statements from the Affidavit of Keith A. See [DE 19-1]:

5.  Sometime after 3 p.m. that day, I very briefly touched the water in the fountain of Freimann Square and then touched my face. I was touching the water in the fountain less than thirty seconds and probably not even ten seconds.

6.  That day, I never bathed in the fountain.

. . .

12. Officer Bush kept me under arrest for five to ten minutes.

13. I was under arrest by Officer Bush because he told me I could not leave his presence and that I had broken the law.

14. Officer Bush did not have probable [*sic*] to arrest me because I did not do anything against the law or anything a police officer could reasonably believe was against the law.

15. The only reason the officer confronted me was because I had filed a lawsuit against the city involving how city police treat homeless people and he wanted to get back at me.

. . .

18. Officer Bush misstated what happened when he said in his [criminal] Complaint and testimony during the prosecution that I broke the law, because I did not swim, wade, or bath [*sic*] in the fountain.

The City and Officer Bush argue that these paragraphs should be stricken because paragraph 5

contradicts prior deposition testimony, paragraph 15 is not based on personal knowledge and is

speculative, and paragraphs 6, 12, 13, 14, and 18 are legal conclusions and are argumentative. Mr. See asserts that these statements should remain in the record.

The City and Officer Bush assert that paragraph 5 violates the "sham-affidavit" rule. The City and Officer Bush contend that precedent from the Seventh Circuit Court of Appeals sets forth that a party may not create an issue of fact via statements in an affidavit that contradict prior sworn statements. However, the rule against sham affidavits "is to be used with 'great caution.'" *U.S. v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016) (quoting *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169 (7th Cir.1996)). "A 'sham affidavit' is an affidavit that is inadmissible because it contradicts the affiant's previous testimony . . . unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse." *Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015) (citing *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 759 (7th Cir. 2006); *Bank of Ill.*, 75 F.3d at 1168-71). The rule against sham-affidavits "applies only when a change in testimony 'is incredible and unexplained,' not when the change is 'plausible and the party offers a suitable explanation . . . '" and "is designed to avoid sham factual issues and prevent parties from taking back concessions that later prove ill-advised." *Funds in the Amount of $271,080*, 816 F.3d at 907 (citing *McCann v. Iroquois Mem'l Hosp.*, 622 F. 3d 745, 751 (7th Cir. 2010); *Cook*, 803 F.3d at 298; *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007); *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d 792, 799 (7th Cir. 2001)).

The City and Officer Bush maintain that paragraph 5 contradicts Mr. See's deposition testimony that "he walked over to the fountain, knelt on both knees, put both of his hands in the fountain, grabbed and brought the water up, and splashed the water so it ran off his face and onto his chest," and that "he had a lot of water in his hands." (Mot. Strike, 2, ECF No. 22 (citing See

Dep., 13, 25, 37, ECF No. 17-3)). There is no contradiction here. The deposition testimony describes the manner of Mr. See's contact with the water in the fountain, and the statement in the affidavit predominantly describes the duration of the contact. The contact could have occurred in the manner described in the deposition testimony for the duration described in the affidavit. Further, in his affidavit, Mr. See describes touching the fountain's water and then touching his face. This is generally consistent with his description of the event in his deposition. There is no incredible and unexplained change in testimony such that the sham affidavit rule should be applied. The Motion to Strike is denied as to paragraph 5.

Next, Federal Rule of Civil Procedure 56 requires that affidavits "used to support or oppose a motion [for summary judgment] must be made on personal knowledge . . . ." Fed. R. Civ. P. 56(c)(4). The City and Officer Bush argue that Mr. See does not have personal knowledge or evidence to support the statements averred in paragraph 15. Mr. See counters that the statement "is based on his personal experiences and drawn from inferences based on his first-hand knowledge, both in his experiences with the City of Fort Wayne Police Department and his experiences in litigation." (Resp. Mot. Strike, 5, ECF No. 23). In paragraph 15, Mr. See purports to have knowledge of Officer Bush's motivation for his actions. There is no evidence presented in the affidavit regarding Officer Bush's reasons for his actions or how Mr. See would have personal knowledge of what made Officer Bush decide to talk to Mr. See about his contact with the fountain's water. This statement is made without personal knowledge, and the Court strikes paragraph 15 from the affidavit.

Lastly, the City and Officer Bush argue that several of Mr. See's statements are legal conclusions. "[L]egal argument in an affidavit may be disregarded." *Pfeil v. Rogers*, 757 F.2d 850,

862 (7th Cir. 1985) (citing *Universal Film Exchs., Inc. v. Walter Reade, Inc.*, 37 F.R.D. 4 (S.D.N.Y. 1965)). However, to strike wholesale the statements contested by the City and Officer Bush would also eliminate statements of fact that are properly included in the affidavit. Accordingly, the Court disregards the legal arguments, such as those that Mr. See "did not bathe" in the fountain and "was under arrest" and that Officer Bush did not have probable cause to arrest Mr. See. However, the facts presented in support of these conclusions, such as "he told me I could not leave his presence" and that the encounter with Officer Bush lasted "five to ten minutes" will be considered by the Court in ruling on the Motion for Summary Judgment.

## MATERIAL FACTS

*Interaction with Water in Freimann Square Fountain*

On June 27, 2016, Mr. See was in Freimann Square in Fort Wayne, Indiana. (See Aff., ¶ 3, ECF No. 19-1). He was repairing a bicycle, *id.* at ¶ 4, and had removed his shirt because it was a hot day, (See Dep. 24:21-22). There is a fountain in Freimann Square. (See Aff., ¶ 5).

At some point after 3:00 p.m., Mr. See knelt at the fountain, put his hands into the fountain, grabbed the water, and brought the water up to splash on his face and chest. (See Dep. 13:14-16, 37:3-4; See Aff., ¶ 5). There was a lot of water in his hands. (See Dep. 37:5-6). He was in contact with the water in the fountain for less than thirty seconds, and likely less than ten seconds. (See Aff., ¶ 5).

Mr. See witnessed at least two other individuals climb into the fountain and wade in the water of the fountain that day, but neither of those individuals were issued citations by Officer Bush or any other police officer of the City of Fort Wayne. *Id.* at ¶¶ 16-17.

A sign is painted on the sidewalk by the fountain which reads "No swimming or wading." (See Dep. 12:2-3). Mr. See saw the sign prior to his contact with the water. *Id.* at 12:12-17.

<u>Encounter Between Mr. See and Officer Bush</u>

Officer Bush, who was on duty as a police officer on bike patrol for the City, observed Mr. See dip his hands into the fountain and splash water on his face, and Officer Bush initiated contact with Mr. See. (Bush Aff., ¶¶ 3-4, 9, ECF No. 17-1). Officer Bush was in police uniform and carrying a firearm. (See Aff., ¶ 10). Officer Bush told Mr. See that he believed Mr. See had broken the law, *id.* at ¶ 9, and explained that bathing in the fountain was prohibited by City Ordinance. (Bush Aff., ¶ 10). Officer Bush told Mr. See that Mr. See could not leave Officer Bush's presence. (See Aff., ¶ 13). This encounter lasted five to ten minutes. *Id.* at ¶ 12; (See Dep. 24:13-14). Mr. See gave Officer Bush permission to pat down Mr. See for weapons. (See Dep. 37:21-24). Officer Bush did not use a weapon or unholster his firearm during the encounter. (Bush Aff., ¶ 12).

<u>Citation for Ordinance Violation</u>

On June 27, 2016, at 3:13 p.m., Officer Bush issued Complaint and Summons No. 766860 to Mr. See for "washing face and hands" in the fountain at the Freimann Square Park in Fort Wayne, Indiana, citing a violation of Local Ordinance § 97.40. *Id.* Ex. A. The Ordinance provides, in relevant part, "No person shall bathe, wade or swim in any pond, fountain, stream or river within any park with the exception of designated, interactive water features (i.e. spray parks)." Fort Wayne, Indiana, Code of Ordinances, Title IX, Chapter 97, Section 40, available at http://library.amlegal.com/nxt/gateway.dll/Indiana/ftwayne/fortwayneindianacodeofordinances?f=templates$fn=default.htm$3.0$vid=amlegal:fortwayne_in (enacted Sept. 14, 2004) (last visited June 29, 2018).

On June 28, 2016, a case was opened in Allen County, Indiana, Superior Court 4 against Mr. See based on Officer Bush's Complaint. (Pl.'s Ex. 2, ECF No. 19-2). In that case, Mr. See filed a Motion to Dismiss and the City filed a Motion for Summary Judgment, both of which Magistrate David M. Zent denied. *Id.* Approximately one week before jury trial was slated to begin, the City filed a Motion to Dismiss, which Magistrate Zent granted. *Id.*

Mr. See was the only person charged with violating Ordinance § 97.40 "between the time period of June 2015 and June 2016." (Answer to Interrog. No. 5, ECF No. 19-3).

## ANALYSIS

In his Complaint, Mr. See alleges violations of the Fourth and Fourteenth Amendments to the United States Constitution as actionable through 42 U.S.C. § 1983 and false arrest and false imprisonment in violation of state law. The parties agree that all constitutional claims based on discrimination due to homelessness brought by Mr. See should be dismissed, and the Court dismisses all such claims accordingly.

## A. Ordinance § 97.40

Underlying the claims in this case is Ordinance § 97.40. The parties dispute what behavior is prohibited by the word "bathe" in that ordinance. Neither side has identified for the Court any judicial or legislative statement regarding the meaning of "bathe" in Ordinance § 97.40. The City and Officer Bush argue that observing Mr. See, while kneeling beside but not in the fountain, "wash his hands, face, and chest" with the fountain's water at a minimum provided Officer Bush with reasonable, articulable suspicion of wrongdoing and probable cause to believe that Mr. See violated the ordinance. Mr. See counters that to "bathe" does not encompass the brief contact with water that occurred here. He cites the tenth edition of Merriam-Webster's Collegiate Dictionary and *State v.*

*Oliver*, 727 A.2d 491, 498 (N.J. Super. App. 1999) in support. Mr. See states that the dictionary provides definitions for "bathe" as "to take a bath," "to go swimming," and "to become immersed or absorbed." (Resp., 11 n.2 (quoting Merriam-Webster's Collegiate Dictionary 98 (10th ed. 2001))). The court in *Oliver* stated that "[b]athing . . . is in simplest terms entering the water resulting in immersion in water." 727 A.2d at 498.

To determine the meaning of "bathe" in the ordinance, the Court must turn to basic principles of statutory interpretation. In cases requiring interpretation of an Indiana statute, the United States Court of Appeals for the Seventh Circuit directs the Court to "predict how the Indiana Supreme Court would answer this question if it were presented to it." *United States v. Navistar Int'l Transp. Corp.*, 152 F.3d 702, 713 (7th Cir.1998) (citing *Konradi v. United States*, 919 F.2d 1207, 1213 (7th Cir.1990)). If enacted pursuant to proper procedure, "municipal ordinances stand on the same footing as acts of the legislature." *Whitewater Valley Canoe Rental, Inc. v. Bd. of Franklin County Comm'rs*, 507 N.E.2d 1001, 1004 (Ind. Ct. App. 1987) (citing *City of Indianapolis v. Clint's Wrecker Service, Inc.*, 440 N.E.2d 737, 740 (Ind. Ct. App. 1982)).

> In Indiana, the lodestar of statutory interpretation is legislative intent, and the plain language of the statute is the "best evidence of . . . [that] intent." *Cubel v. Cubel*, 876 N.E.2d 1117, 1120 (Ind. 2007). Generally, the words in a statute should be given their ordinary meaning. While courts should try to give effect to each word in a statute, they ought not to do so myopically. Instead, "[t]he statute should be examined as a whole, avoiding both excessive reliance on strict literal meaning and selective reading of individual words." *Id.*; *Tormoehlen v. State*, 848 N.E.2d 326, 330 (Ind. Ct. App. 2006) (noting that "legislative intent as ascertained from the whole prevails over the strict, literal meaning of any word or term used" in a statute).

*Estate of Moreland v. Dieter*, 576 F.3d 691, 695 (7th Cir. 2009).

Here, the word "bathe" is found in a series of three words: "bathe, wade or swim." "[W]hen words 'are associated in a context suggesting that the words have something in common, they should

10

be assigned a permissible meaning that makes them similar.'" *Our Country Home Enters., Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 786 (7th Cir. 2017) (quoting Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 195 (2012)). This is the canon of statutory interpretation known as *noscitur a sociis* ("it is known by its associates," that is, "a word may be known by the company it keeps"). *Id.* (quoting *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 287 (2010)). However, "[a] list of three items, each quite distinct from the other no matter how construed, is too short to be particularly illuminating." *Graham Cty. Soil & Water Conservation Dist.*, 559 U.S. at 288 (finding "administrative" in "congressional, administrative or Government Accounting Office" to be not limited to only *federal* administrative matters).

Here, the words "bathe," "wade," and "swim" are all of a similar nature. It is true that "bathe" can be used to connote contact with liquid that does not require a person's body to fully enter water, as in the phrase "to bathe a wound." However, in the ordinance at issue here, "bathe" is found in a series also containing the words "wade" and "swim." "Wade" and "swim" are not "quite distinct" so as to render the canon unhelpful. In their normal usage, wading and swimming involve a body entering the water, not making contact with it from a location outside of the water. Thus, the City and Officer Bush's interpretation of "bathe" in the ordinance is incorrect. In this ordinance, in light of the guidance provided by the canon, "bathe" requires a person's body to fully enter the area in which the water is found. Mr. See did not bathe in the fountain by dipping his hands into the fountain for less than thirty seconds.

### B. Constitutional Claims

Mr. See alleges constitutional violations under 42 U.S.C. § 1983 by Officer Bush. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 itself does not establish substantive rights; rather, it is a vehicle for vindicating federal rights conferred elsewhere. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). Mr. See asserts that his rights protected by the Fourth Amendment were violated in that he was subject to unreasonable seizure. Mr. See further argues that he has a federal claim for malicious prosecution.

To state a claim under § 1983, a plaintiff must show (1) that he "was deprived of a right secured by the Constitution or federal law" (2) "by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

The constitutional claims are brought against Officer Bush only and not the City. Officer Bush argues that he is entitled to qualified immunity and that he did not violate Mr. See's constitutional rights.

1.    *Unreasonable Seizure*

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."[1] U.S. Const. amend. IV. A person is "seized" for purposes of the Fourth Amendment "if,

---

[1] Mr. See does not bring a claim for unreasonable search.

12

in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). In his affidavit, Mr. See averred that Officer Bush told him that he was not free to leave Officer Bush's presence. Thus, for the purposes of this motion, in which all reasonable inferences are made in favor of the non-moving party, the Court assumes that Mr. See was seized.

But seizure alone is not a Fourth Amendment violation; the seizure must also be unreasonable. *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1010 (7th Cir. 2000) (quoting *Donovan v. City of Milwaukee*, 17 F.3d 944, 949 (7th Cir. 1994)). "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, and its proper application requires careful attention to the facts and circumstances of each particular case." *Id.* (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Arrest without probable cause is an unreasonable seizure, *Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir.2009), as is performing an investigatory stop without reasonable suspicion, *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "Reasonable suspicion is some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002) (internal quotation marks omitted) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

a.   Nature of the Seizure

Mr. See maintains that he was arrested, while Officer Bush contends that, at most, the encounter was an investigatory stop, also known as a *Terry* stop, after *Terry v. Ohio*, 392 U.S. 1 (1967). Mr. See asserts that Officer Bush has conceded that Mr. See was under arrest. Mr. See does so by taking out of its context the phrase "arrest the plaintiff" in Officer Bush's affirmative defense,

which in full reads: "There was probable cause to arrest the plaintiff." (Aff. Defense ¶ 18, ECF No. 5). There is no concession of arrest here.

A seizure can take the form of an arrest or an investigative stop. An arrest occurs when "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to the degree which the law associates with formal arrest." *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999).

> Several factors are relevant in deciding whether a *Terry* stop has become an arrest including the officer's intent in stopping the individual, whether there was a search, whether, or how much, questioning occurred, whether there was a show of force and whether the person stopped could be said to have been taken into custody.

*United States v. Rodriguez*, 831 F.2d 162, 166 (7th Cir. 1987).

> The line between a lawful *Terry* stop and an unlawful arrest is not bright, especially since we have witnessed a multifaceted expansion of *Terry*. . . . For better or for worse, the trend has led to the permitting of the use of handcuffs, the placing of suspects in police cruisers, the drawing of weapons and other measures of force more traditionally associated with arrest than with investigatory detention.

*United States v. Askew*, 403 F.3d 496, 507 (7th Cir. 2005) (ellipsis in original) (internal quotation marks and citation omitted) (quoting *United States v. Tilmon*, 19 F.3d 1221, 1224–25 (7th Cir. 1994)) (citing *United States v. Vega*, 72 F.3d 507, 515 (7th Cir.1995)). An investigatory stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Jewett v. Anders*, 521 F.3d 818, 824 (7th Cir 1987) (quoting *Terry*, 392 U.S. at 20). Writing a citation does not transform an investigatory stop into an arrest. *Id.* at 827; *see also Rodriquez*, 831 F.2d at 166.

Here, the evidence viewed in the light most favorable to Mr. See indicates that Officer Bush, while in police uniform and carrying but never unholstering a firearm, stopped Mr. See for five to ten minutes. Officer Bush told Mr. See that Mr. See could not leave and that Officer Bush believed

that he had broken the law. Officer Bush obtained Mr. See's consent to perform a pat-down search and issued a citation for ordinance violation to Mr. See.

The evidence before the Court does not permit a finding that the seizure amounted to an arrest. Officer Bush's actions were confined to those necessary to issue the citation. A reasonable person would not have interpreted the situation to be on par with a formal arrest. The encounter between Mr. See and Officer Bush was an investigatory stop.

### b. Constitutional Violation

Officer Bush's testimony is that he observed Mr. See dip his hands into the water of the fountain and splash himself with that water. Because, as found above, a violation of the ordinance requires a person to enter the water, Officer Bush did not have a reasonable suspicion that Mr. See had broken the law or was about to break the law. It is not reasonable to assume based on Mr. See's dipping his hands into the water that he was about to fully enter the water and bathe, swim, or wade in it. Thus, the investigatory stop violated Mr. See's constitutional right to be free from unreasonable seizure.

### c. Qualified Immunity

Officer Bush contends that he is entitled to qualified immunity. "[G]overnmental actors performing discretionary functions enjoy qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *In re Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010) (quoting *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007)). This defense gives public officials "breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who

knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To overcome the defense of qualified immunity on summary judgment, a plaintiff must show (1) that, viewing the facts in the light most favorable to plaintiff, the officer violated the plaintiff's constitutional rights and (2) that the right in question was clearly established at the time of violation. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009); *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). The Court may choose the order in which it evaluates these questions, and a failure to show either establishes the defense of qualified immunity. *Pearson*, 555 U.S. at 232. A right is "clearly established" when there is either a closely analogous case that establishes that the conduct is unconstitutional or when the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution. *Siebert v. Severino*, 256 F.3d 648, 654 (7th Cir. 2001) (citing *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1022 (7th Cir. 2000)). "[C]learly established law should not be defined at a high level of generality" and "must be particularized to the facts of the case." *White v. Pauly*, — U.S. —, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted) (quoting *al-Kidd*, 563 U.S. at 742; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As discussed above, the facts viewed most favorably to Mr. See show that he did not violate the local ordinance by dipping his hands into the water of the fountain and that there was no reasonable suspicion to support an investigatory stop. However, "[q]ualified immunity protects those officers who make a reasonable error in determining whether there is reasonable suspicion to conduct a *Terry* stop." *Jewett*, 521 F.3d at 827 (citing *Feathers v. Aey*, 319 F.3d 843, 850–51 (6th Cir.2003); *Smith v. City of Chicago*, 242 F.3d 737, 742–43 (7th Cir. 2001); *Lindsey v. Storey*, 936 F.2d 554, 559 (11th Cir.1991)).

Neither side has presented any authority to the Court in which the meaning of "bathe" in the local ordinance is clarified. Given the lack of authority clearly establishing the scope of bathing prohibited by the ordinance, Mr. See has not shown that his constitutional right was "clearly established." A reasonable officer could have believed that Mr. See's contact with the water violated the ban on bathing and, thus, that he had reasonable suspicion sufficient for a lawful investigatory stop. Thus, Officer Bush's error was reasonable, and he is entitled to qualified immunity on the unreasonable seizure claim.

2.    *Malicious Prosecution*

"[T]here is no such thing as a constitutional right not to be prosecuted without probable cause." *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013). Therefore, Mr. See must show some other constitutional violation to make his "malicious prosecution" claim actionable under section 1983. *Id.* Here, Mr. See alleges deprivation of his constitutionally protected right to liberty. Thus, he "must demonstrate that (1) he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (citing *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996)). Officer Bush does not argue that Mr. See cannot show that Officer Bush is a state actor or that Mr. See was deprived of liberty.[2]

Under Indiana law, the elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the

___

[2]Though Officer Bush does not raise the issue, the Seventh Circuit Court of Appeals has held that a liberty violation cannot be based solely on being required to defend against charges. *Serino v. Hensley*, 735 F.3d 588, 594 (7th Cir. 2013) (citing *Alexander v. McKinney*, 692 F.3d 553, 557 n.2 (7th Cir. 2012) ("[T]he burden of appearing in court and attending trial, in and of itself, constitute a deprivation of liberty."); *Mahoney v. Kesery*, 976 F.2d 1054, 1060 (7th Cir. 1992) ("[W]e do not think a required court appearance, any more than having to show up at the motor vehicle bureau to take a driving test in order to get a driver's license, is a sufficient deprivation of liberty to warrant the elevation of malicious prosecution to a constitutional tort.")).

defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor.

*Marten v. Swain*, 242 F. Supp. 3d 744, 760-61 (S.D. Ind. 2017) (quoting *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014)). Officer Bush does not contest that elements (1) and (4) are met. Next, similar to the finding that Officer Bush lacked a reasonable suspicion for an investigatory stop, the Court's finding that "bathe" requires fully entering the water necessitates a finding that there was no probable cause to institute the action against Mr. See for violation of the ordinance. Thus, the only element left to resolve is whether Officer Bush acted with malice. "Malice may be shown by evidence of personal animosity or inferred from a complete lack of probable cause or a failure to conduct an adequate investigation under the circumstances." *Welton*, 770 F.3d at 674 (internal quotation marks omitted) (quoting *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009)).

Mr. See argues that he has presented evidence allowing an inference of malice. He asserts that Officer Bush made "knowing misstatements" and gave "untruthful testimony," (Resp., 13, ECF No. 20), and further contends that "Defendant Bush's malice may be inferred from his decision to arrest Mr. See without probable cause and participate in his prosecution where no probable cause existed to further the prosecution," (Resp., 14 (citing *Welton*, 770 F.3d at 674)). However, at this stage in litigation, Mr. See must present evidence in support.

The evidence Mr. See submits to the Court on this issue is his affidavit, in which he avers: "Officer Bush misstated what happened when he said in his Complaint and testimony during the prosecution that I broke the law, because I did not swim, wade, or bath [*sic*] in the fountain," (See Aff. ¶ 18), and the Chronological Case Summary from the state court case brought against him for violation of the ordinance. There is no allegation, much less evidence, of Officer Bush's specific

statements during the prosecution. Further, Mr. See avers in his affidavit that Officer Bush *misstated* what happened, but not that any of Officer Bush's statements were "*knowingly* false, that he withheld exculpatory evidence from the prosecutor, or that he took steps to wrongfully further what he knew was a baseless prosecution." *Serino v. Hensley*, 735 F.3d 588, 594 (7th Cir. 2013) (citing *Reed v City of Chicago*, 77 F. 3d 1049, 1053 (7th Cir. 1996); *Tully v. Barada* 599 F.3d 591, 595 (7th Cir. 2010)). Though Mr. See asks the Court to infer malice from Officer Bush's actions due to the lack of probable cause, the Court has found that a reasonable officer could reasonably, though mistakenly, believe that there was probable cause to believe that Mr. See had violated the ordinance.

Mr. See has failed to present evidence upon which a reasonable jury could determine that Officer See acted with malice. Because Mr. See has not met his evidentiary burden, summary judgment in favor of Officer Bush on this claim is appropriate.[3]

### C. State Law Claim

Though Mr. See argues that he was subjected to false imprisonment and false arrest, he affirms that, under Indiana law, the claims are analyzed together where the claim of false imprisonment stems from an allegedly false arrest. *See Row v. Holt*, 864 N.E.2d 1011, 1016 n.4 (Ind. 2007). "The tort of false imprisonment occurs when there is an (1) unlawful (2) restraint (3) upon one's freedom of movement or the deprivation of one's liberty (4) without consent." *Donovan v. Hoosier Park, LLC*, 84 N.E.3d 1198, 1207 (Ind. Ct. App. 2017) (citing *Ali v. Alliance Home Health Care, LLC*, 53 N.E.3d 420, 432 (Ind. Ct. App. 2016)). "An arrest is false if it is accomplished without the required legal basis, e.g., probable cause for a custodial arrest and reasonable suspicion

---

[3]Defendants also assert that they have immunity to a state law claim of malicious prosecution. Because Mr. See has not brought a claim of malicious prosecution under Indiana state law, the Court need not provide analysis on the issue.

for a *Terry* stop." *Turner v. Sheriff of Marion Cty.*, 94 F. Supp. 2d 966, 995 (S.D. Ind. 2000); *see also Chestnet v. K-Mart Corp.*, 529 N.E.2d 131, 134 (Ind. Ct. App. 1988) ("If a detention is lawful, by definition, it cannot constitute false imprisonment.").

With the dismissal of Plaintiff's federal claims, the Court considers the status of its supplemental jurisdiction under 28 U.S.C. § 1367 over the state law tort claim. A district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]he presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims" when the federal claims are dismissed before trial. *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3); *Beck v. Dobrowski*, 559 F.3d 680,686 (7th Cir. 2009)). A district court should exercise its discretion to relinquish jurisdiction over supplemental state law claims remaining after the dismissal of federal claims subject to three exceptions: "when the refiling of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (citing *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir.2007); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994)).

Because the exceptions do not apply here, the Court exercises its discretion to relinquish jurisdiction of the state law tort claim. The statute of limitations does not provide a basis for maintaining jurisdiction. Under Indiana law, "'[i]n general, the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious

act of another.'" *Chang v. Purdue Univ.*, 985 N.E.2d 35, 52 (Ind. Ct. App. 2013) (quoting *Filip v. Block*, 879 N.E.2d 1076, 1082 (Ind. 2008)). The pertinent facts allegedly occurred on June 27, 2016. Therefore, Mr. See's Complaint was timely filed on August 24, 2017, as to his state law tort claim. Pursuant to 28 U.S.C. § 1367, the period of limitations is tolled for supplemental state law claims while the claim is pending in federal court and for a period of thirty days after the supplemental state claim is dismissed, unless state law provides for a longer tolling period. 28 U.S.C. § 1367(d); *see also Artis v. District of Colombia*, — U.S. —, 138 S. Ct. 594, 598 (2018) . Therefore, Mr. See may refile this case in state court. Second, the Court has not expended substantial judicial resources on the state claim. The two motions ruled on in this Opinion and Order are the only motions that have been filed in this litigation, and the only hearings held were the October 17, 2017 Preliminary Pre-Trial Conference and the November 29, 2017 Scheduling Conference held upon consent of the parties to the undersigned's jurisdiction. Finally, it is not "clearly apparent" how the claim is to be decided. Therefore, the Court relinquishes jurisdiction and remands to state court the state law tort claim.

### D. Punitive Damages

Officer Bush and the City also argue that Mr. See is not entitled to punitive damages. In his Complaint, Mr. See requests "punitive damages against individual Defendants." To the extent Mr. See seeks punitive damages on his constitutional claims, Mr. See cannot recover such damages because the Court is granting summary judgment against Mr. See on those claims. To the extent Mr. See seeks punitive damages on the state law tort claim, the Court has relinquished jurisdiction over the matter.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** the Defendants' Motion to Strike Portions of Keith See's Affidavit [DE 22] and **GRANTS in part** Defendants' Motion for Summary Judgment and Designation of Evidence [DE 17] and **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant Officer Bush and against Plaintiff Keith See on the claims of unlawful seizure and malicious prosecution in violation of Mr. See's constitutional rights. By consent of the parties, the Court **DISMISSES** all claims alleging discrimination due to homelessness in violation of Mr. See's constitutional rights.

Under 28 U.S.C. § 1367(c)(3), the Court **RELINQUISHES** its jurisdiction over the state law tort claim for false imprisonment and false arrest and **REMANDS** that claim to Allen County, Indiana, Superior Court for all further proceedings.

SO ORDERED this 29th day of June, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT